IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CALVIN DOUGLAS DYESS,
        Movant,

v.                                  CIVIL ACTION No. 2:08-00849
                                    Criminal No. 2:99-00012-01

UNITED STATES OF AMERICA,
        Respondent.

<u>MEMORANDUM OPINION & ORDER</u>

Before the court is Petitioner Calvin D. Dyess' ("Dyess")
Petition to Vacate, Set Aside or Correct Sentence by a Person in
Federal Custody pursuant to 28 U.S.C. § 2255 (Docs. # 1105, 1120,
1161 in 2:08-cv-00849).  For the reasons expressed herein, the
court **DENIES** Mr. Dyess' Petition.

## I. Factual and Procedural Background

For a detailed and thorough examination of the factual and
procedural background of this case, see <u>United States v. Dyess</u>,
478 F.3d 224, 227-34 (4th Cir. 2007).

Mr. Dyess submitted a letter-form motion to Vacate, Set
Aside or Correct Sentence by a Person in Federal Custody,
pursuant to 28 U.S.C. § 2255, on June 17, 2008.  Although
initially referred to Magistrate Judge Mary E. Stanley for
submission of proposed findings and recommendation, Magistrate
Judge Stanley later recused herself from the case, citing a
potential conflict.  On February 2, 2010, Mr. Dyess filed a

1

motion to alter or amend his initial letter-form motion, and
submitted a new, more detailed Amended Petition.  Given Mr.
Dyess' later submission, the court will consider his Amended
Petition in determining the grounds for relief that Mr. Dyess
sets forth.

## II. Standard of Review

Mr. Dyess enumerates sixteen different grounds for relief in
his Petition.  All but one of these grounds present ineffective
assistance of counsel claims.

As this court has recognized,

> The standards established by the United
> States Supreme Court in determining whether a
> defendant was denied his Sixth Amendment
> right to effective assistance of counsel are
> set forth in Strickland v. Washington, 466
> U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d
> 674 (1984). Under Strickland, a plaintiff
> must show (1) that counsel's performance was
> so deficient that it fell below an objective
> standard of reasonableness, and (2) that
> counsel's deficiency resulted in prejudice so
> as to render the results of the trial
> unreliable. Id. at 687-91. Counsel's
> performance is entitled to a presumption of
> reasonableness. Id.  Thus, a habeas plaintiff
> challenging his conviction on the grounds of
> ineffective assistance must overcome a strong
> presumption that the challenged actions
> constituted sound trial strategies. Id. at
> 689. The Court in Strickland cautioned
> against the ease in second-guessing counsel's
> unsuccessful assistance after the adverse
> conviction and sentence are entered. Id. The
> Fourth Circuit Court of Appeals specifically
> recognized that ineffective assistance of
> counsel may not be established by a "Monday
> morning quarterbacking" review of counsel's
> choice of trial strategy. Stamper v. Muncie,

944 F.2d 170, 178 (4th Cir. 1991), <u>cert.
denied</u>, 506 U.S. 1087, 113 S. Ct. 1069, 122
L. Ed. 2d 372 (1993).

<u>Scott v. United States</u>, No. 1:08-0047, 2011 U.S. Dist. LEXIS 34018, at *5-6 (S.D. W. Va. Mar. 29, 2011).  "When a defendant challenges a conviction entered after a guilty plea, the 'prejudice' prong of the test is slightly modified.  Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985)).

### III. Analysis

The court now considers each of Mr. Dyess's grounds for relief in turn.

*Ground I*

Mr. Dyess first argues that his trial counsel was ineffective for failing to make an objection under <u>Jones v. United States</u>, 526 U.S. 227 (1999), to Mr. Dyess' superseding indictment.  The superseding indictment was issued sometime between February 4, 1999 and February 26, 1999.  <u>See</u> Docket Sheet, Doc. ## 47, 79.

The <u>Jones</u> case held that where a factual finding increases the eventual penalty for a crime charged, courts should resolve any doubt about whether the factual finding is an element of the

3

offense or a sentence enhancement in favor of being an element, such that it needs to be charged in the indictment. The <u>Jones</u> case arose in the context of a carjacking prosecution, and involved the elements for conviction necessary under 18 U.S.C. § 2119. Mr. Dyess' superseding indictment lacked any language referencing drug-types and quantities, and the length of his sentence depended, in part, on the quantity of drugs that the government attributed to him during his criminal proceedings.

Mr. Dyess argues that in the wake of <u>Jones</u>, it was at best unclear whether <u>Jones</u> applied to drug-types and quantities in a prosecution under 21 U.S.C. § 841, the statute the Government used to prosecute Mr. Dyess. In the face of such uncertainty, Mr. Dyess maintains that his trial counsel should have objected to the lack of specific drug quantities in Mr. Dyess' superseding indictment, by arguing that <u>Jones</u> applied to his situation as well. Mr. Dyess believes that counsel's failure to object to the indictment therefore constitutes ineffective assistance of counsel.

According to the timeline of the case, however, counsel's failure to make a <u>Jones</u> objection was not objectively unreasonable. The United States Supreme Court issued its opinion in <u>Jones</u> on March 24, 1999. In the aftermath of <u>Jones</u>, it remained an open question whether the case applied to drug quantity and type determinations under 21 U.S.C. § 841.

4

Nevertheless, between the date Jones was issued, and February 8,
2000, all federal Circuit Courts considering the question
concluded that Jones did not extend to the § 841 context, and on
February 8, 2000, the Fourth Circuit weighed in on the issue, and
also concluded in United States v. Smith, No. 99-4454, 2000 U.S.
App. LEXIS 1695 (4th Cir. 2000), that Jones did not apply to 21
U.S.C. § 841 drug types and quantities.  The law in the Fourth
Circuit remained unchanged until June 2000, when the U.S. Supreme
Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000).
Shortly thereafter, the Fourth Circuit reversed its holding in
Smith, and in United States v. Angle, 230 F.3d 113 (4th Cir.
2000), held that Jones did apply to drug types and quantities
under 21 U.S.C. § 841.

Considering the timeline of the law's development, it is
apparent that at the time Mr. Dyess pleaded guilty, on April 21,
1999, no federal Court of Appeals thought Jones applicable to Mr.
Dyess' case.  As the Fourth Circuit later confirmed in Smith, the
dominant opinion in the legal community, until the Supreme
Court's decision in Apprendi, was that Jones did not extend to
the § 841 context.  Against this backdrop, counsel's decision not
to make a Jones objection to Dyess' superseding indictment cannot
be considered objectively unreasonable.

The court's finding here is consistent with the decisions of
other courts considering this issue.  See, e.g., Jones v. United

States, No: L-03-2985, 2007 U.S. Dist. LEXIS 22886, at *7-8 (D. Md. Mar. 28, 2007) ("It is a well-established principle that counsel need not predict future changes in the governing law to be judged competent"); United States v. Holt, 46 Fed. Appx. 306, 312 (6th Cir. 2002) (no ineffective assistance of counsel where defendant's attorney did not foresee Apprendi's eventual extension of Jones to the § 841 context).

*Ground II*

Mr. Dyess next argues that by proffering drug amounts at the plea hearing that were not specified in the indictment, the Government constructively amended his indictment, and counsel's failure to object to such an amendment constitutes ineffective assistance of counsel.

As the Fourth Circuit has explained:

> "A constructive amendment to an indictment occurs when . . . the court (usually through its instructions to the jury) . . . broadens the possible bases for conviction beyond those presented by the grand jury." Floresca, 38 F.3d at 710. Constructive amendments are considered fatal variances "because the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." Randall, 171 F.3d at 203.

United States v. Woods, 271 Fed. Appx. 338, 342 (4th Cir. 2008). Mr. Dyess also argues that by failing to challenge the constructive amendment, his counsel misinformed Mr. Dyess about the wisdom of stipulating to the drug amounts at the plea

hearing.  Mr. Dyess now claims that this stipulation was unknowingly made, and as a result his whole calculus for pleading guilty was altered.  He states that had he known the Government constructively amended the indictment, he would not have pled guilty at the time.

Mr. Dyess' arguments are unavailing because his counsel's failure to object was not un acted reasonably in not objecting. As the Fourth Circuit noted, constructive amendments are problematic because they alter the "<u>elements</u> of the offense charged, such that the defendant is actually convicted of a crime other than charged in the indictment."  <u>Id.</u> (emphasis added).  At the time of his plea hearing, however, drug quantities were not considered elements of the offense charged, but rather sentencing enhancements.  <u>See</u> <u>Smith</u>, 2000 U.S. App. LEXIS 1695, <u>see</u> <u>also</u> infra pp. 2-3.  Thus, a reasonable attorney at the time of Mr. Dyess' plea hearing would not have considered the inclusion of the drug quantities to be a constructive amendment. Consequently, Mr. Dyess' trial counsel was not ineffective under the first prong of <u>Strickland</u> in failing to object to the Government's proffer of drug quantities at the plea hearing.

*Ground III*

Mr. Dyess also maintains that his trial counsel's failure to advise him of the legal significance of the <u>Jones</u> case constitutes ineffective assistance of counsel.  Mr. Dyess is

7

misguided in this argument as well.  As discussed above in Ground
I, the prevailing opinion in the legal community at the time Mr.
Dyess pled guilty was that _Jones_ did not apply to drug quantities
under 21 U.S.C. § 841.  _See_ _Smith_, 2000 U.S. App. LEXIS 1695.
Consequently, Mr. Dyess' counsel would have had no reason to
discuss how _Jones_ related to Mr. Dyess' case.  As such, counsel's
failure to tell Mr. Dyess about _Jones_ was not objectively
unreasonable, and counsel's assistance was not ineffective.

_Ground IV_

Mr. Dyess next argues that his trial counsel was ineffective
for failing to tell Mr. Dyess about a potential conflict of
interest that Ms. Rader's attorney may have had.  "On January 11,
1999, Nelson R. Bickley forwarded [...] a letter to [Mr. Dyess'
trial counsel], informing him that in a previous criminal matter
he represented Mr. Dyess, and was now assigned to represent Ms.
Rader."  Amended Petition, p. 10.  Mr. Bickley's letter provides,
in relevant part,

> The Public Defender's Office has appointed me
> to represent Ursala Rachael Dyess in a case
> that her husband, your client, is a co-
> defendant.  The purpose of this letter is to
> inform you that I represented Calvin
> previously in another criminal case.  Mrs.
> Dyess has no problem with me representing
> her.  Further, I do not believe any
> information I obtained when I represented him
> is adverse to his interest.  However, if Mr.
> Dyess believes that my representing his wife
> is a conflict of his interest, I will, of
> course, withdraw as her counsel.

Attachment 2 to Amended Petition.  Importantly, Mr. Bickley
highlights in his letter that he does not believe he received any

8

information from his previous representation of Mr. Dyess that would prejudice him in the instant case.  Mr. Dyess claims that his trial counsel never told him about Mr. Bickley's letter, and that if Mr. Dyess had seen the letter, he would have asked for Mr. Bickley to be disqualified from representing Ms. Rader.

Mr. Dyess' ineffective assistance claim fails because he does not show that his attorney's failure to advise him of a possible conflict on the part of Ms. Rader's lawyer prejudiced Mr. Dyess' own case.  As Mr. Dyess himself states in his Amended Petition, "[Dyess] based this decision [to ask for Mr. Bickley's disqualification], not upon what later happened in this case, but what transpired while Mr. Bickley was representing him in a previous matter."  Amended Petition at 10.  Thus, by Mr. Dyess' own admission, Mr. Bickley's continued representation of Ms. Rader did nothing to alter the outcome of the instant case. Whatever negative experience Mr. Dyess may have had with Mr. Bickley during the prior representation is irrelevant if Mr. Bickley's representation of Ms. Rader in Mr. Dyess' subsequent case had no impact on those proceedings.  Consequently, under the second-prong of the _Strickland_ test, Mr. Dyess has failed to make a showing of prejudice.

_Ground V_

Mr. Dyess' next argues that his trial counsel was ineffective for failing to move to withdraw Mr. Dyess' guilty plea when the Government showed bad faith with respect to

9

allowing Mr. Dyess to provide the government with information in the hope of obtaining a substantial assistance motion.

Under the first prong of Strickland, there is little in Mr. Dyess' allegations to suggest that his trial counsel acted objectively unreasonably with respect to Mr. Dyess' opportunities for debriefing.  First, Mr. Dyess does not claim that he asked his counsel to withdraw his guilty plea.  Instead, Mr. Dyess seems to suggest that his trial counsel should have known that the Government was denying him the benefit of a substantial assistance motion by failing to allow Mr. Dyess to debrief properly in various sessions with the Government.  Although Mr. Dyess claims that he made his attorney aware of these sham debriefing sessions, Mr. Dyess concedes that his trial counsel was not present at all of the debriefings, and as such had no first-hand knowledge of what actually transpired.

Second, counsel's decisions are entitled to a "strong presumption that the challenged actions constituted sound trial strategies."  Scott, 2011 U.S. Dist. LEXIS 34018, at *5-6. While it may have been problematic for Mr. Dyess that he did not have the benefit of a full debriefing, this does not necessarily mean that a reasonable attorney would have asked for a withdrawal of his client's guilty plea.  A plea agreement often confers material benefit to a defendant who is otherwise facing a potentially much more onerous sentence, if convicted at trial.

It is not unreasonable for counsel to conclude that, on balance, it is still better for his client to have the benefit of the guilty plea, even if he has not had the full benefit of debriefing.

This is not to say, however, that counsel did not try to bring the problem of Mr. Dyess' debriefings to the court's attention.  Indeed, the record reveals that while not making a motion to withdraw Mr. Dyess' guilty plea, counsel raised the issue with the court at the time of Mr. Dyess' sentencing, in an attempt to secure acceptance of responsibility for his client. In discussing the government's handling of Mr. Dyess' debriefings, counsel stated:

> He's caught, he decides to enter a plea of guilty.  Immediately they come out to debrief him and they expect him to tell them right up front everything that he's done.  That's ridiculous.  Any investigator, and they know it, will know that the first debriefings in these situations are more of a get together than anything else [...] They never attempted to do a second debriefing.  I asked for a second debriefing, they refused to give him a second debriefing.  The three officers involved, each one refused.  I was in the room when the U.S. Attorney called them. Each one of them refused to do it.  I then debriefed him myself with my investigator and we made a proffer.  Then they went out to debrief him.  It lasted a very short time and arguments ensued, almost a fight.  So that was not successful in giving a debriefing [...] the government in this case, in this man's acceptance of responsibility, the investigating arm of the government has not acted in good faith [...] I believe and am stating on the record that the investigative

11

> arm of the drug investigation is a farce in
> this situation, and I ask the Court to take
> that into consideration.  This man has been
> willing – we had to do a self debriefing in
> informing the Court of what the situation
> was, and we ask the Court to give him that
> acceptance of responsibility.

Sentencing Transcript, pp. 430-32.  After giving the United

States an opportunity to respond, the sentencing judge declined

to give Mr. Dyess acceptance of responsibility, stating that,

> And any time that a defendant is entitled to
> a benefit of the doubt in that regard, I
> extend it, particularly when the guidelines
> are as stiff as they are in this instance.
> But this is not a situation where Mr. Dyess
> is entitled to consideration of accepting his
> responsibility [...] He has lied in his
> debriefing, he has obstructed justice by
> attempting to intimidate both witnesses in
> the case and members of the law enforcement
> team.  The fact that you are somewhat
> surprised that law enforcement officers would
> not be overly interested in cooperating by
> giving Mr. Dyess chances doesn't – I mean
> that doesn't surprise the Court [...] Under
> those circumstances, the Court cannot
> conceive of giving Mr. Dyess acceptance of
> responsibility.  Mr. Dyess has fought this
> thing all the way through with an in-your-
> face attitude to everybody that is concerned,
> and I deny that motion.

Id. at 435-36.  The court thus rejected, firmly, counsel's

attempts to secure at the very least acceptance of responsibility

for Mr. Dyess.  Based on the court's response, there does not

appear to be more that counsel could have done.  As the court's

reply to counsel's objection demonstrates, the court was not

willing to grant an acceptance of responsibility motion for Mr.

12

Dyess. It is hard to imagine that the court would have been more willing to entertain a motion to withdraw Mr. Dyess' guilty plea, based on the same deficient debriefing argument. See United States v. Doss, No. 10-4680, 2011 U.S. App. LEXIS 10278, at *2 (4th Cir. May 19, 2011) ("A defendant does not have an absolute right to withdraw a guilty plea. United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). A motion to withdraw should be granted only if the defendant advances a fair and just reason for doing so."). Given the context of this issue, the court is persuaded that counsel acted reasonably in attempting to bring the debriefing issue to the court's attention, without moving to withdraw Mr. Dyess' guilty plea. As a result, the court finds that Mr. Dyess' attorney did not act with objective unreasonableness in failing to unilaterally move for a withdrawal of his client's guilty plea.

*Ground VI*

Mr. Dyess next argues that his trial counsel was ineffective for failing to advise him of the actual sentence Mr. Dyess was exposing himself to by virtue of pleading guilty. Mr. Dyess suggests that counsel neglected to discuss with him the potential for the government to seek sentencing enhancements based on Dyess' leadership role in the conspiracy, obstruction of justice, and possession of a firearm. Rather, Mr. Dyess' counsel allegedly told him that he was confident Mr. Dyess would be given

13

credit for acceptance of responsibility and receive a sentence less than life in prison.  As such, Mr. Dyess argues that he was misinformed of the likelihood he would receive a life sentence. Had he realized the high probability of receiving life in prison, Dyess argues he would not have pled guilty.

A review of the record indicates that Mr. Dyess' argument in this respect is unavailing.  Both the plea agreement and the plea colloquy make it clear that Mr. Dyess knew he faced the possibility of life in prison.  Plea, p. 2; Transcript of Plea Hearing (Doc. # 800), pp. 25-26.  The Fourth Circuit also affirmed the clarity with which Mr. Dyess' counsel explained his potential sentence to Mr. Dyess in its 2007 Opinion in this case. Dyess, 478 F.3d at 237-38.  Whether counsel correctly assessed the probability that Mr. Dyess would receive a life sentence does not negate the fact that at the time Mr. Dyess pled guilty, he was at the very least aware of the possibility that he would receive a life sentence.  Furthermore, Judge Haden made it clear in the plea colloquy that the court would only be able to determine Mr. Dyess' ultimate sentence after the receipt of the Pre-Sentence Investigation report.  Transcript of Plea Hearing, pp. 27-28.  Thus, Mr. Dyess was aware that additional information may be revealed following his guilty plea that could have a bearing on the length of his sentence.  As such, it is disingenuous for Mr. Dyess to argue that he had an unrealistic

14

awareness of his potential exposure to a life sentence.  Even if
he had been somewhat misguided by his attorney, the subsequent
statements of Judge Haden in the plea colloquy would have
corrected any prejudice resulting from counsel's statements.
See, e.g., Champion v. Ludwick, No. 2:08-cv-13657, 2009 U.S.
Dist. LEXIS 16235, at *7 (E.D. Mich. Feb. 26, 2009) (a "proper
plea colloquy will cure any misunderstandings that a petitioner
may have had about the consequences of the plea.").

*Ground VII*

Mr. Dyess' seventh ground for relief is identical to his
fifth ground, and alleges ineffective assistance of counsel with
respect to counsel's failure to motion for a withdrawal of his
guilty plea in light of the Government's failure to properly
debrief him.  As the two grounds are identical, the court refers
back to its discussion of Ground XV for this section.

*Ground VIII*

Mr. Dyess also argues that counsel provided ineffective
assistance when he conceded, at the sentencing hearing, the four-
point enhancement for Mr. Dyess' role as the leader of the drug
conspiracy.  In particular, Mr. Dyess argues that by conceding
the leadership role, his counsel effectively waived the issued
and prevented Mr. Dyess from being able to raise his four-point
enhancement on appeal.

Mr. Dyess' argument is simply misguided.  The record makes

15

clear that counsel renewed his objection to the leadership
enhancement just before the court sentenced Mr. Dyess.  Dyess'
counsel stated:

> And also, Your Honor, on objection to the
> increase because of role in the offense, I
> have stated my position before, I believe
> this was a joint responsibility of a number
> of people.  I think the Court has already
> evidenced an opinion on that, but I just
> wanted to make – raise that issue, Your
> Honor.

Sentencing Transcript, pp. 436-37.  To this renewed objection,
the court stated,

> The defendant's level should be enhanced also
> by four points for his role in this offense,
> and I overrule the defense objection here.
> Mr. Dyess was the leader, manager and
> supervisor of a drug conspiracy that went for
> several years and it involved five or more
> underlings [...].

Id. at p. 437.  In addition, the Fourth Circuit noted in its
February 28, 2007 opinion that Mr. Dyess had not admitted to any
of the sentencing factors, including his "organizing role in drug
distribution."  Dyess, 478 F.3d, at 241.

In light of the evidence in the record, the court finds that
Mr. Dyess' counsel did not concede the leadership role issue, and
thereby prevent Dyess from raising it on appeal.

Ground IX

Mr. Dyess next argues that his trial counsel provided
ineffective assistance in failing to file a motion to revoke his
guilty plea prior to sentencing, despite the fact that Dyess

16

specifically asked him to file such a motion.  Dyess states that
his counsel informed him that he had filed the motion with the
court, but that for some reason, the motion did not show up on
the court's docket.

In considering such claims, most courts focus on the
prejudice that the defendant suffered as a result of counsel's
failure to follow his client's request and file a motion to
withdraw.  Where it appears that the defendant suffered no
prejudice as a result of counsel's failure to file a motion to
withdraw, there is no finding of ineffective assistance of
counsel.

Counsel's failure to file a motion to withdraw a guilty plea
on behalf of his client is not presumed to be prejudicial.  See
Franks v. Lindamood, No. 07-6272, 2010 U.S. App. LEXIS 19756, at
*14-16 (6th Cir. 2010) ("Where, as in this case, the defendant is
not necessarily entitled to have filed the motion he requests,
there is no basis for us to extend Flores-Ortega and presume
counsel's failure to file the motion was prejudicial.").  Rather,
the defendant must set forth the reasons he would have given in
support of his request to withdraw his guilty plea, and
demonstrate the likelihood that his request would have been
successful.  See Wrolen v. United States, No. 09-cv-51-JPG, 2010
U.S. Dist. LEXIS 75336, at *14-15 (S.D. Ill. July 27, 2010) ("As
the Court found Wrolen's plea to be voluntary and a showing has

not been made as to his actual or legal innocence, Stenger's decision against filing a motion to withdraw the plea does not equate to ineffective assistance"); <u>United States v. Pea</u>, No. 03-50013-07, 2009 U.S. Dist. LEXIS 121792, t *10-12 (W.D. La. Dec. 4, 2009)("There is no indication that Pea's motion would have been accepted nor has he given any fair or just reason for his request to withdraw"); <u>Reneau v. Evans</u>, No. EDCV 07-0150 FMC (SS), 2009 U.S. Dist. LEXIS 105764, at *34-35 (C.D. Cal. Oct. 16, 2009)("Petitioner's trial counsel was therefore not deficient in failing to file a motion to withdraw the guilty plea, because 'counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.'") (quoting <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994)); <u>Hartzog v. Brooks</u>, No. 4:CV-05-1635, 2006 U.S. Dist. LEXIS 21620, at *24-26 (M.D. Pa. Apr. 20, 2006) ("Hartzog asserts only that he requested his counsel to withdraw his guilty plea [...] He offers no basis for withdrawing his guilty plea. Thus, he cannot show that he was prejudiced by counsel's failure to pursue a motion to withdraw.").

In the instant case, Mr. Dyess has not shown that his motion to withdraw his guilty plea would have been successful.  He sets forth no explanation as to why he wanted the motion filed, and he presents no arguments whatsoever in support thereof.  In the Fourth Circuit, "[a] defendant does not have an absolute right to

withdraw a guilty plea, but bears the burden of demonstrating a fair and just reason to justify his request for withdrawal." United States v. Leech, No. 08-4432, 2011 U.S. App. LEXIS 2199, at *10 (4th Cir. Feb. 2, 2011). In fact, Mr. Dyess does not even state the date on which he allegedly asked for counsel to file a motion to withdraw his guilty plea. Instead, Mr. Dyess simply asserts that he made the request "prior to sentencing." Amended Petition, p. 18. In the absence of a showing that he would likely have been allowed to withdraw his guilty plea, Mr. Dyess fails to demonstrate prejudice under Strickland.

*Ground X*

As a further ground for relief, Mr. Dyess argues that his trial counsel rendered ineffective assistance when he failed to object to the Government's breach of the plea agreement at Mr. Dyess' sentencing hearing. In particular, Mr. Dyess argues that the Government breached the agreement by disclosing to the court information which Mr. Dyess had provided to the Government during his debriefings with prosecutors. This, Mr. Dyess asserts, constituted a breach of the plea agreement, under paragraph seven, entitled "Use Immunity." See Plea Agreement, p. 6. That paragraph provides,

> Unless this agreement becomes void due to a
> violation of any of its terms by Mr. Dyess,
> nothing contained in any statement or
> testimony provided by him pursuant to this
> agreement, or any evidence developed
> therefrom, will be used against Mr. Dyess,

19

> directly or indirectly, in any further
> criminal prosecutions or in determining the
> applicable guideline range under the Federal
> Sentencing Guidelines.

Plea Agreement, p. 6.  Specifically, Mr. Dyess objects to the

following statements of the Assistant United States Attorney at

the sentencing hearing:

> He did enter into a plea agreement, he did
> submit some information to the United States
> and there were his two debriefing sessions.
> And in each of those debriefing sessions.
> Well, in the first one he admitted some trips
> to Texas where he talked about 11 kilograms
> of cocaine on one trip.  In the subsequent
> debriefing he was back to his story of 12 to
> 17 kilograms total.  Then he lied about
> Texas, but he wanted us to believe that
> Ursala had other money.

Amended Petition, pp. 19-20 (quoting Sentencing Transcript, p.

434).  Mr. Dyess argues that by discussing his debriefing

statements at the sentencing hearing, and by revealing his

inconsistent statements, the government torpedoed Mr. Dyess'

effort to secure a downward adjustment for acceptance of

responsibility.  This, in turn, affected the ultimate sentence

that he received.  Consequently, Mr. Dyess argues that the

government's statements at the sentencing hearing breached that

portion of the plea agreement which prohibits the government's

use of defendant's debriefing testimony "in determining the

applicable guideline range under the Federal Sentencing

Guidelines."

Mr. Dyess' argument is disingenuous.  As the sentencing

transcript demonstrates, the Government's statements were made for the purpose of explaining why the Government did not move for acceptance of responsibility.   See Sentencing Transcript, pp. 432-34.   They were not made for the purpose of determining the applicable sentencing range, but rather to demonstrate that the Government declined to make a motion for acceptance of responsibility due to Mr. Dyess' duplicity.   As the sentencing Judge noted immediately thereafter,

> And any time that a defendant is entitled to a benefit of the doubt in that regard, I extend it, particularly when the guidelines are as stiff as they are in this instance. But this is not a situation where Mr. Dyess is entitled to consideration of accepting his responsibility [...] He has lied in his debriefing, he has obstructed justice by attempting to intimidate both witnesses in the case and members of the law enforcement team.   The fact that you are somewhat surprised that law enforcement officers would not be overly interested in cooperating by giving Mr. Dyess chances doesn't – I mean that doesn't surprise the Court [...] Under those circumstances, the Court cannot conceive of giving Mr. Dyess acceptance of responsibility.   Mr. Dyess has fought this thing all the way through with an in-your-face attitude to everybody that is concerned, and I deny that motion.

Sentencing Transcript at 435-36.   As such, the Government did not violate the terms of Dyess' plea agreement in responding to a question that Mr. Dyess himself placed into issue by way of objection.   Given the context of the statements, it was not objectively unreasonable for counsel to forego an objection.

21

*Ground XI*

Mr. Dyess next contends that his trial counsel was ineffective for failing to properly investigate the relationship between Ms. Rader and Officer Hart when Mr. Dyess first informed him of the relationship.  In particular, Mr. Dyess faults his counsel for not bringing the potential relationship between Ms. Rader and Officer Hart to the court's attention at his sentencing hearing.

A review of the record suggests that Mr. Dyess' trial counsel was in fact diligent in investigating a potential relationship between Ms. Rader and Officer Hart once he learned about the possibility of an inappropriate relationship.  As Mr. Dyess himself acknowledges, his counsel retained an investigator after Mr. Dyess mentioned the possibility of a relationship between Ms. Rader and Officer Hart.  Further, Mr. Dyess' counsel held meetings with Mr. Dyess and the investigator in order to "develop a plan of action, while Dyess told them all that he could learn."  Amended Complaint, p. 22.  When Mr. Dyess asked counsel why he failed to raise the issue at sentencing, his counsel replied that "he had yet to prove it," and wanted to spend more time investigating.

Counsel's decision to hire an investigator, and then request that Mr. Dyess pass along as much information as possible to aid the investigation constitutes a vigorous response to Mr. Dyess'

22

concern that Ms. Rader and Officer Hart were having an inappropriate relationship.  Counsel's hesitation to suggest an inappropriate affair at the sentencing hearing is reasonable, given that neither he, nor anyone else, had evidence to prove a relationship until April 2002, when the Government made its first set of disclosures prior to oral argument in this case before the Fourth Circuit.  Accordingly, the court finds that counsel acted reasonably in investigating the Hart-Rader relationship at the time it was revealed to him, and his conduct does not constitute ineffective assistance of counsel.

### Ground XII

Mr. Dyess' twelfth ground for relief is that the Government introduced perjured testimony through Officer Hart at Mr. Dyess' preliminary hearing, and Mr. Dyess' counsel failed to bring the perjured testimony to anyone's attention.  Despite the suggestion of ineffective assistance of counsel, it is clear that Mr. Dyess is basing this ground for relief on the Government's alleged misconduct, rather than the allegedly deficient performance of his attorney.

As Mr. Dyess does not appear to have raised this claim on direct appeal, there is some question as to whether the claim is even cognizable in a habeas petition.  Resolving the doubt in Mr. Dyess' favor, however, the court notes that even if the claim is cognizable, it is nonetheless fruitless.  The Fourth Circuit has

23

held that a defendant, in entering a guilty plea "waives all
nonjurisdictional defects in the proceedings conducted prior to
entry of the plea." United States v. Bundy, 392 F.3d 641, 644
(4th Cir. 2004).  The waiver includes constitutional objections
as well.  See, e.g., United States v. Bailey, No. 09-4915, 2011
U.S. App. LEXIS 10742, at *4 (4th Cir. May 27, 2011) ("The right
to challenge on appeal a Fourth Amendment issue raised in a
motion to suppress is a nonjurisdictional defense and is thus
forfeited by an unconditional guilty plea.").  Thus, having
entered a guilty plea, Mr. Dyess cannot, at this stage, contest
alleged deficiencies in his preliminary hearing.

*Ground XIII*

     Mr. Dyess next alleges that his appellate counsel, Jane
Moran, provided ineffective assistance when she failed to call
all of the sentencing witnesses to testify at the evidentiary
hearing held by this court in July 2004.  Mr. Dyess asserts that
Ms. Moran should have called these witnesses in an attempt to
determine, as accurately as possible, whether the misconduct by
Hart, Rader, Henderson, Green, and Cummings had an impact on Mr.
Dyess' guideline level at sentencing.

     Mr. Dyess' contention is unavailing because he fails to show
how counsel's decision not to call certain witnesses prevented
the evidentiary hearing from meeting its objective.  As the court
noted at the start of the evidentiary hearing,

> [I]t seems to me the inquiry is really pretty
> simple.  Maybe I'm oversimplifying things,
> but we have a record of the sentencing, we
> have a record of the evidence that was before
> Judge Haden, that he based his ruling on.  It
> seems to me that my task – and you can
> correct me if you disagree with this, and I
> hope you will.  My task is to look at that in
> the light of what we now know and see if he
> relied, to any extent, on any of the
> information that we now know to be false or
> tainted [...] It seems to me that's the
> simple inquiry.  And we know – we have a
> record of what he looked at, we have a record
> of the information that's come to light since
> then, and the issue is whether the bad
> information was considered by him or not.

Evidentiary Hearing Transcript, (Doc. # 994), p. 11.  All but one
of the witnesses who were alleged to have credibility problems –
Hart, Rader, Henderson and Cummings - testified at the
evidentiary hearing, and defense counsel had an adequate
opportunity to examine whether their duplicity undermined Mr.
Dyess' sentence.  Green, who recanted the testimony he provided
at the sentencing hearing, did not testify at the evidentiary
hearing, but the court took judicial notice of Green's affidavit
recanting his previous testimony.  See Memorandum Opinion and
Order dated February 11, 2005 (Doc. # 1001), p. 8.  Mr. Dyess
fails to show in his Amended Petition how calling other witnesses
would have helped this determination.  In light of counsel's
decision to call only those witnesses pertinent to the court's
stated objective, the court finds that counsel did not act
unreasonably.

25

Furthermore, Mr. Dyess cannot show any prejudice with regard to counsel's alleged error. Following the evidentiary hearing, this court determined that

> there is ample testimony in the record that has not been contradicted to support original sentences of Judge Haden.  Therefore the court concludes that in spite of the credibility problems of Rader, Hart, Henderson, and Green, the original sentences are supported by abundant credible evidence. Consequently, the defendants' motions to vacate their sentences are denied.  Their motions to be resentenced are likewise denied.

Memorandum Opinion and Order entered February 11, 2005 (Doc. # 1001), p. 11.  As such, even if counsel had called all other witnesses, and even if the witnesses would have persuaded the court not to believe the duplicitous testimonies of the witnesses, the court's finding would have remained the same, and Mr. Dyess' sentence would have still been affirmed.  This being the case, Mr. Dyess cannot show that he was prejudiced by counsel's decision not to call additional witnesses.

## *Ground XIV*

Mr. Dyess next argues that Ms. Moran was ineffective in her presentation of Mr. Dyess' motion to withdraw his guilty plea before the evidentiary hearing held by this court.  Mr. Dyess contends that Ms. Moran's motion to withdraw his guilty plea should have been based on the alleged "several lies" that Mr. Dyess' trial counsel supposedly told him.

26

As an initial matter, the court believes that Mr. Dyess is confused with respect to who filed a motion to withdraw his guilty plea on his behalf.  The record does not show that Ms. Moran made a motion to withdraw Mr. Dyess' guilty plea.  Instead, Mr. Dyess' other counsel, John Hackney, filed a motion to withdraw his guilty plea on July 9, 2003 (Doc. # 825).  The court notes that Mr. Hackney premised his motion with the caveat that some, or all of the grounds presented for withdrawal may not have merit.  See Additional Motions of Calvin Dyess, p.1.  As Mr. Dyess states, this motion (prepared by Mr. Hackney) was premised mostly on the argument that the credibility of the testimony used in the case had been called into serious question following the revelation of the Hart-Rader relationship.  The court denied that motion to withdraw on December 17, 2003 (Doc. # 887).

Attempting to resolve the confusion in Mr. Dyess' Amended Petition, the court believes Mr. Dyess is arguing that Jane Moran should have filed another motion following the court's denial of Mr. Hackney's motion to withdraw Mr. Dyess' guilty plea based not on problems with witness credibility, but rather on trial counsel John Mitchell's alleged misrepresentations to Mr. Dyess.

This contention fails, however, because Mr. Dyess provides no support for it whatsoever.  As the court explained in its discussion of Mr. Dyess' ninth ground for relief, he must demonstrate that counsel's failure to file a motion to withdraw

27

his guilty plea prejudiced his case by demonstrating that, in all likelihood, the court would have allowed the withdrawal.  See supra, pp. 16-19.  Such a showing becomes even harder to make when Mr. Dyess did not even request that his guilty plea be withdrawn.

Mr. Dyess fails to set forth in his Amended Petition what Mr. Mitchell's supposed misrepresentations were.  As a result, the court is left with the conclusory allegation that Mr. Mitchell lied to him, and Ms. Moran acted unreasonably when she failed to file a second motion to withdraw Mr. Dyess' guilty plea.  Such unsubstantiated allegations do not demonstrate that Mr. Dyess' motion, if filed, would have had a chance of success.  Indeed, they demonstrate quite the opposite.  Accordingly, as Mr. Dyess has failed to demonstrate prejudice in his case, the court finds that Ms. Moran did not provide ineffective assistance in failing to file a motion to withdraw Mr. Dyess' guilty plea.

*Ground XV*

Mr. Dyess further argues that the court should re-sentence him because the factual predicate for his obstruction of justice enhancement has been undermined by the credibility problems of some of the witnesses.  Specifically, Mr. Dyess argues that the sentencing court based its decision regarding the obstruction of justice enhancement on testimony provided by Hart, Henderson and Rader – all witnesses whose credibility was later called into

question following the revelation of the affair between Ms. Rader and Officer Hart.  Consequently, Mr. Dyess argues that the allegations against him which provided the basis for his sentencing enhancement have now been called into question.

As a practical matter, Mr. Dyess' argument would fail to secure him any relief, even if he could demonstrate that his counsel was ineffective for failing to seek re-sentencing.  This is because even if he were re-sentenced without an obstruction of justice enhancement, Mr. Dyess would still face a mandatory life sentence.

When he was sentenced, Mr. Dyess had a total offense level of 46.  This represents the base offense level (38), as well as the four additional points for his leadership role in the conspiracy (42), the two additional points for proximity of the firearms to the drugs (44), and two points for obstruction of justice (46).  Consequently, even if Mr. Dyess were re-sentenced without the two point obstruction of justice enhancement, he would still have an offense level of 44, which, under the Sentencing Guidelines, still mandates life in prison.  U.S.S.G. p. 401.

*Ground XVI*

Finally, and rather tenuously, Mr. Dyess asserts that Ms. Moran, his counsel at the evidentiary hearing before the undersigned, was ineffective for failing to call sentencing

29

witnesses at the hearing in order to have their credibility re-
determined.[1]  Mr. Dyess asserts that this would have been
necessary following Officer Hart's alleged perjury at Mr. Dyess'
preliminary hearing related to information he received from Mr.
Weldon that implicated Mr. Dyess in narcotics distribution.  As a
consequence of Officer Hart's alleged perjury, Mr. Dyess claims
that Ms. Moran should have investigated the other sentencing
witnesses, to make sure that their testimony at the sentencing
hearing had not been improperly influenced by Officer Hart.  It
is Mr. Dyess' belief that had Ms. Moran undertaken such an
investigation, she would have discovered that those witnesses
presented false testimony as well.  In turn, Ms. Moran should
have called those witnesses at the evidentiary hearing held on
July 9, 2004 to have their credibility re-assessed.

     Mr. Dyess's claim is unavailing, because counsel did not act
unreasonably under the circumstances.  As discussed above in
Ground XIII, the evidentiary hearing held before the undersigned
had a limited purpose; namely, to determine whether the
information that had come to light prior to the appeal had had an
adverse impact on the defendant's sentence.  Ms. Moran attempted

---

[1] Mr. Dyess filed this claim on June 13, 2011 (Doc. # 1190).
As the court was not certain whether it was intended as a
clarification or modification of Mr. Dyess' resubmitted Claim XII
on May 17, 2011 (Doc. # 1188), the court considered the claim
independently, although the court notes that there are certain
similarities between the two claims.

to recharacterize the hearing as a continuation of the sentencing hearing, so that credibility determinations could be made anew. As such, Mr. Dyess' argument that Ms. Moran failed to ask the court for a redetermination of the sentencing witnesses' credibility is simply wrong, and plainly contradicted by the record.  Ms. Moran presented this request and made arguments in support thereof at the evidentiary hearing.  Ms. Moran noted that "The defense wishes at this time to preserve their argument that what is happening today is, in fact, a continuation of the sentencing hearings of our clients."  Evidentiary Hearing Transcript, (Doc. # 994), p. 8.  She then went on to argue that in Mr. Dyess' case, there was no way to determine what precise information Judge Haden relied on in making his findings.  Id. at 8-9.  After the court responded that the issues to be considered at the evidentiary hearing were narrower, Ms. Moran once again stated that,

> The only thing that I would disagree with
> that, Your Honor, is that in rereading Judge
> Haden's decision at the conclusion of the
> sentencing hearing on my client, he really
> gave no indication of what specific pieces of
> evidence he was relying upon.  And this
> leaves us with no alternative but to try to
> prove what I mentioned earlier, which is that
> the behavior of the people involved in the
> investigation so tainted the investigation
> that all of the witnesses were tainted.

Id. at 11-12.  The court's ultimate decision to limit the hearing to narrower issues does not invalidate Ms. Moran's efforts.  As

such, she cannot be said to have acted with objective
unreasonableness in pursuing Mr. Dyess' goals.  In fact, Ms.
Moran pursued those goals vigorously, as demonstrated by her
remarks at the evidentiary hearing.

### III. Conclusion

In view of Mr. Dyess' failure to show entitlement to relief
under any of the several grounds he sets forth, the court hereby
**DENIES** Mr. Dyess' Petition to Vacate, Set Aside or Correct
Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. §
2255.  Accordingly, the court **DENIES** Docs. # 1105, 1120 and 1161
in 2:08-cv-00849.  The court further **DENIES** Docs. # 1123 and 1156
as moot.

Additionally, the court has considered whether to grant a
certificate of appealability.  See 28 U.S.C. § 2253(c).  A
certificate will not be granted unless there is "a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  The standard is satisfied only upon a showing that
reasonable jurists would find that any assessment of the
constitutional claims by this court is debatable or wrong and
that any dispositive procedural ruling is likewise debatable.
Miller- El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v.
McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676,
683-84 (4th Cir. 2001).  The court concludes that the governing
standard is not satisfied in this instance. Accordingly, the
court **DENIES** a certificate of appealability.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record, and Petitioner, pro se.

It is **SO ORDERED** this 22nd day of August, 2011.

ENTER:

David A. Faber
Senior United States District Judge